**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

In re:

MOTION TO QUASH SUBPOENA
ISSUED TO NON-PARTY CHEYNE
CAPITAL US, LP

Case No. 24-MC-

**MEMORANDUM OF LAW IN SUPPORT OF**
**NON-PARTY CHEYNE CAPITAL US, LP'S MOTION TO QUASH SUBPOENA**

## <u>TABLE OF CONTENTS</u>

BACKGROUND ................................................................................................................ 2

ARGUMENT .................................................................................................................... 8

    I.    The Subpoena Should Be Quashed as the Documents Requested are Not Within Cheyne Capital US's Possession, Custody, or Control.......................................... 8

    II.    The Subpoena is Overbroad, Seeks Information not Relevant or Proportional to the needs of the Alabama Proceeding, and Compliance Would Impose an Undue Burden on Cheyne Capital US............................................................................ 12

    III.    The Subpoena is Improper and The Court Should Award Attorney's Fees ......... 18

CONCLUSION................................................................................................................ 20

## **TABLES OF AUTHORITIES**

**Cases**

*Alexander v. New York City Dep't of Educ.*,
    339 F.R.D. 372 (S.D.N.Y. 2021) ......................................................................... 13

*American Int'l Life Assurance Co. v. Vasquez*,
    2003 WL 548736 (S.D.N.Y. Feb. 25, 2003) ....................................................... 18

*Citizens Union of N.Y.C. v. Att'y Gen. of N.Y.*,
    269 F. Supp. 3d 124 (S.D.N.Y. 2017) ............................................................... 13

*Estate of Ungar v. Palestinian Authority*,
    332 F. App'x 643 (2d Cir. 2009) ....................................................................... 17

*Golden Trade S.r.L. v. Lee Apparel Co.*,
    143 F.R.D. 514 (S.D.N.Y. 1992) ......................................................................... 9

*Henry v. Morgan's Hotel Grp., Inc.*,
    2016 WL 303114 (S.D.N.Y. Jan. 25, 2016) ....................................................... 17

*In re Liverpool Ltd. P'ship*,
    2021 WL 5605044 (S.D.N.Y. Nov. 24, 2021) ..................................................... 9

*In re Mun*,
    2022 WL 17718815 (S.D.N.Y. Dec. 15, 2022) ................................................... 8

*In re Vivendi Universal, S.A. Sec. Litig.*,
    2009 WL 8588405 (S.D.N.Y. July 10, 2009) ......................................... 9, 11, 12

*Laker Airways Ltd. v. Pan Am. World Airways*,
    607 F. Supp. 324 (S.D.N.Y. 1985) ................................................................ 9, 12

*Medical Properties Trust, Inc. v. Viceroy Research LLC, et al.*,
    No. 23-cv-408 (N.D. Ala., filed Mar. 30, 2023) ................................................. 1

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.*,
    2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) ............................................. 18, 19

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
    490 F.3d 130 (2d Cir. 2007).................................................................................. 8

**Rules**

Fed. R. Civ. P. 45 .................................................................................... 8, 18, 19

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-party Cheyne Capital US, LP  respectfully submits this Memorandum of Law in support of its Motion to Quash Medical Properties Trust, Inc.'s Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in Civil Action, dated April 9, 2024 (the "Subpoena"), and for attorney's fees and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

The underlying litigation for which this discovery is being sought was brought by Medical Properties Trust, Inc. ("MPT") in the Northern District of Alabama and is captioned *Medical Properties Trust, Inc. v. Viceroy Research LLC, et al.*, No. 23-cv-408 (N.D. Ala., filed Mar. 30, 2023) (the "Alabama Proceeding").  On January 18, 2024, the court in the Alabama Proceeding issued a Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Letter Rogatory"), on the basis that "it would further the interests of justice to obtain documents in the possession of non-party Cheyne Capital Management (UK) LLP."  Shortly thereafter, Plaintiff MPT sent a letter to "Cheyne Capital UK Ltd." (an entity that does not exist) demanding a production of documents on the basis of the Letter Rogatory, noting it was "preparing to file the 'Intended Hague Application'" and expressing in the alternative a (false) entitlement to pre-action disclosure under English law.  Counsel for Cheyne Capital Management (UK) LLP responded, explaining the deficiencies in MPT's demand letter.  Rather than pursue the legal process MPT had started to obtain discovery abroad, MPT instead issued the instant Subpoena to Cheyne Capital US, LP, containing document requests that are materially identical to the Letter Rogatory, in a naked attempt to circumvent the Hague Convention and the requirements of English law.

Indeed, Cheyne Capital US, LP is an entirely separate entity from both Cheyne Capital Management (UK) LLP (to which the Letter Rogatory was directed) and Cheyne Capital UK Limited (to which MPT addressed its communication regarding the Letter Rogatory and which, as noted, does not exist).  For these reasons, the Subpoena should be quashed in the first instance because the only relevant discovery it seeks is located abroad (with Cheyne Capital Management (UK) LLP), and is beyond the possession, custody or control of Cheyne Capital US, LP as an indirect affiliate of Cheyne Capital Management (UK) LLP (subject of the Letter Rogatory). Indeed, any discovery sought pursuant to the Subpoena here must be obtained from Cheyne Capital Management (UK) LLP (and is therefore subject to the requirements of the Hague Convention and English law), for which the Alabama Court issued the Letter Rogatory.

The Subpoena is also subject to being quashed for the independent reason that it is extraordinarily overbroad and vague and therefore compliance with the Subpoena would impose an undue burden on Cheyne Capital US, LP.  For example, if one applies the definitions in the Subpoena to only a subsection of the first category of documents requested, it literally requires a review and production of communications by any (unspecified) individuals working on behalf of any (also unspecified) individuals or entities working on behalf of the named defendants in the Alabama Proceeding.  Finally, having been asked to withdraw the Subpoena based on its facial defects, and refusing to do so (or even to amend the Subpoena to narrow its requests), MPT should be ordered to pay Cheyne Capital US, LP's reasonable fees and costs in bringing this motion.

## **BACKGROUND**

### **The Alabama Proceeding**

Plaintiff MPT brought the underlying Alabama Proceeding against various defendants, alleging defamation, civil conspiracy, tortious interference with contractual or business relations, private nuisance, and unjust enrichment arising from the defendants' public dissemination of

2

research reports and other statements about MPT, which are alleged to have caused the company stock price to drop. *See* Ex. 1 (Complaint).[1]  In connection with discovery in that action, certain of the defendants in the Alabama Proceeding are reported to have disclosed the existence of an agreement between themselves and non-party Cheyne Capital Management (UK) LLP ("Cheyne Capital UK").  Cheyne Capital UK is not named as a defendant in the Alabama Proceeding.  The substance of this agreement is described by MPT to be that the defendants in the Alabama Proceeding (Fraser John Perring, Gabriel Bernarde, Aidan Lau, and/or Viceroy Research LLC) were to receive $30,000 a month in exchange for sharing research with Cheyne Capital UK and were given the right to 15% of the profits, if any, that Cheyne Capital UK made on short sales of MPT securities. *See* Ex. 4 at 2 (Letter Rogatory).  Nowhere in any of this is Cheyne Capital US, LP ("Cheyne Capital US") mentioned.

**The Letter Rogatory Directed to Cheyne Capital Management (UK) LLP**

On January 18, 2024, at the request of MPT, the United States District Court for the Northern District of Alabama (the "Alabama District Court") issued a Letter Rogatory on the ground that "it would further the interests of justice to obtain documents in the possession of non-party Cheyne Capital Management (UK) LLP." *See* Ex. 4 at 1.  The Letter Rogatory attached as an exhibit two broad requests for "Documents and Communications related to any Defendant, or any Person working on behalf of or in concert with any Defendant," and "Documents and Communications relating to MPT or MPT Securities." *Id.*

In its initial motion to obtain the Letter Rogatory, counsel for Plaintiff MPT filed a declaration in support of the motion, stating explicitly that the defendants in the Alabama

---

[1] Citations in the form of "Ex. __" refer to exhibits to the Declaration of Shireen Barday, which is being filed concurrently in support of this Motion to Quash.

Proceeding opposed MPT's document requests "to the extent they seek documents that are unrelated to MPT."  Ex. 3 ¶ 5.  Further, under penalty of perjury, counsel stated she would "cause to be filed" the Letter Rogatory "with The Senior Master" of the "Royal Courts of Justice" in London once the Letter Rogatory was issued.  *See* Ex. 3 ¶ 4.  And in its motion papers in support of its application, MPT told the Alabama District Court that "[t]he evidence sought by Plaintiff can ***only*** be obtained" from Cheyne Capital UK.  Ex. 2 at 8.[2]

On March 6, 2024, MPT sent a letter addressed to "Cheyne Capital UK Ltd." (a non-existent entity) but referring to "Cheyne Capital Management ('Cheyne Capital')," demanding a production of documents on the basis of the Letter Rogatory, noting it was "preparing to file the 'Intended Hague Application'" and expressing in the alternative a (false) entitlement to pre-action disclosure under English law.  Ex. 5 (March 6 Letter).  On March 13, 2024, Cheyne Capital UK replied to the March 6 Letter, denying MPT's requests for documents on the grounds that they were extremely wide and vague, and thus tantamount to an inappropriate fishing expedition.  Ex. 6 (March 13 Letter).  Cheyne Capital UK also pointed out that if the true aim of the Letter Rogatory was to acquire documents for use in a potential proceeding in England against Cheyne Capital UK, that would be improper and an abuse of process.  *Id.*  There was no response from MPT and, as of the date hereof, MPT does not appear to have obtained (or even attempted to obtain) any English Court order to enforce the Letter Rogatory.

**The Instant Subpoena**

On April 30, 2024, the instant Subpoena was served on Cheyne Capital US, seeking exactly the same discovery sought through the Letter Rogatory from Cheyne Capital UK.  *Compare* Ex. 4 (Letter Rogatory) *with* Decl. of Daniel Bordage ("Bordage Decl."), Ex. 1 (Subpoena).  Indeed, the

---

[2] Unless otherwise noted, all emphasis has been added.

Subpoena even uses identical wording as used in the Letter Rogatory, which is demonstrated in the chart below with the Letter Rogatory (on left), and the Subpoena (on right). The only difference in the language of the requests is underlined below.

| Letter Rogatory | Subpoena |
|---|---|
| **REQUEST NO. 1**<br><br>Documents and Communications related to any Defendant, or any Person working on behalf of or in concert with any Defendant. For the avoidance of doubt, this Request encompasses:<br><br>A. Documents or Communications sent to, or received from, any Defendant;<br><br><br><br><br>B. Documents and Communications concerning any payments made to, or received from, any Defendant, or any Person working on behalf of or in concert with any Defendant; and<br><br>C. Documents and Communications concerning contracts, memoranda of understanding, letters of intent, confidentiality agreements, non-disclosure agreements, profit-, risk-, loss-, or cost-sharing agreements, or other agreements or draft agreements of any kind, whether written or oral, between You and any Defendant, or any Person working on behalf of or in concert with any Defendant. | **REQUEST NO. 1**<br><br>Documents and Communications related to any Defendant, or any Person working on behalf of or in concert with any Defendant. For the avoidance of doubt, this Request encompasses:<br><br>A. Documents or Communications sent to, or received from, any Defendant<u>, including but not limited to communications exchanged pursuant to any agreement between You and any Defendant</u>;<br><br>B. Documents and Communications concerning any payments made to, or received from, any Defendant, or any Person working on behalf of or in concert with any Defendant; and<br><br>C. Documents and Communications concerning contracts, memoranda of understanding, letters of intent, confidentiality agreements, non-disclosure agreements, profit-, risk-, loss-, or cost-sharing agreements, or other agreements or draft agreements of any kind, whether written or oral, between You and any Defendant, or any Person working on behalf of or in concert with any Defendant. |
| **REQUEST NO. 2**<br><br>Documents and Communications relating to MPT or MPT Securities. For the avoidance of doubt, this Request encompasses:<br><br>A. Documents and communications concerning any communications, interactions, discussions, or meetings between You and any other Person(s) concerning MPT, including, without limitation, communications between You and Hedgeye Risk Management, LLC, Robert Simone (Hedgeye), Keith McCullough (Hedgeye), Matthew Pascale (formerly of Point 72 Asset Management), Richard Mortell (Third | **REQUEST NO. 2**<br><br>Documents and Communications relating to MPT or MPT Securities. For the avoidance of doubt, this Request encompasses:<br><br>A. Documents and communications concerning any communications, interactions, discussions, or meetings between You and any other Person(s) concerning MPT, including, without limitation, communications between You and Hedgeye Risk Management, LLC, Robert Simone (Hedgeye), Keith McCullough (Hedgeye), Matthew Pascale (formerly of Point 72 Asset Management), Richard Mortell (Third |

| Letter Rogatory | Subpoena |
|---|---|
| Coast Real Estate Capital), Edwin Dorsey (Bear Cave), Greg Gillespie (formerly of Tacet Global Limited), Nick Helsby, Romaine Beurr, Jacques Griesel, Brian Spegele (The Wall Street Journal), Jonathan Weil (The Wall Street Journal), Laura Benitez (Bloomberg), Charlie Conchie, Moe Tkacik (The American Prospect), Teri Buhl (Buhl Reports), David Lindsay (The Shift), Aurelia Seidlhofer (Reorg), Claude Risner (Debtwire), or Peter Shalson; | Coast Real Estate Capital), Edwin Dorsey (Bear Cave), Greg Gillespie (formerly of Tacet Global Limited), Nick Helsby, Romaine Beurr, Jacques Griesel, Brian Spegele (The Wall Street Journal), Jonathan Weil (The Wall Street Journal), Laura Benitez (Bloomberg), Charlie Conchie, Moe Tkacik (The American Prospect), Teri Buhl (Buhl Reports), David Lindsay (The Shift), Aurelia Seidlhofer (Reorg), Claude Risner (Debtwire), or Peter Shalson; |
| B.  Documents and Communications concerning contracts, memoranda of understanding, letters of intent, confidentiality agreements, non-disclosure agreements, profit-, risk-, loss-, or cost-sharing agreements, or other agreements or draft agreements of any kind, whether written or oral, between You and any other Person, including without limitation the Persons listed in Request No. 2 above, concerning MPT; | B.  Documents and Communications concerning contracts, memoranda of understanding, letters of intent, confidentiality agreements, non-disclosure agreements, profit-, risk-, loss-, or cost-sharing agreements, or other agreements or draft agreements of any kind, whether written or oral, between You and any other Person, including without limitation the Persons listed in Request No. 2 above, concerning MPT; |
| C.  All Documents and Communications concerning or relating to any payments or other consideration paid by You to any other Person, whether actual or potential, in exchange for or in connection with the creation or dissemination of Tweets, Reports, statements, or other material concerning MPT; | C.  All Documents and Communications concerning or relating to any payments or other consideration paid by You to any other Person, whether actual or potential, in exchange for or in connection with the creation or dissemination of Tweets, Reports, statements, or other material concerning MPT; |
| D.  Documents and Communications related to the value of MPT Securities and any recommendation to purchase, sell, or short-sell MPT Securities; | D.  Documents and Communications related to the value of MPT Securities and any recommendation to purchase, sell, or short-sell MPT Securities; |
| E.  Documents and Communications related to any Reports or other public statements concerning MPT, including Documents and Communications regarding any decision to create or publish any Report, Tweet, or other public statement concerning MPT, and any records of or related to any meetings concerning the foregoing; and | E.  Documents and Communications related to any Reports or other public statements concerning MPT, including Documents and Communications regarding any decision to create or publish any Report, Tweet, or other public statement concerning MPT, and any records of or related to any meetings concerning the foregoing; and |
| F.  Documents and Communications concerning any Transaction in MPT Securities by You or any Person acting on behalf of You, including any short sales of MPT Securities. | F.  Documents and Communications concerning any Transaction in MPT Securities by You or any Person acting on behalf of You, including any short sales of MPT Securities. |

As can be seen, the only difference between the Subpoena and the Letter Rogatory is that the

Subpoena adds in Subpart A of Request 1 that the communications it seeks are "including but not

limited to communications exchanged pursuant to any agreement between You and any Defendant." That does not actually limit Request No. 1 in any way. Bordage Decl., Ex. 1 at 8.

### The Cheyne Capital Entities

Cheyne Capital US, LP is a Delaware limited partnership with its principal place of business at 1350 Avenue of Americas, 28th Floor, New York, NY 10019, USA. *See* Bordage Decl. ¶ 2. Cheyne Capital US, LP's general partner is another American company, Cheyne Capital US, LLC. *Id.* ¶ 4. Cheyne Capital Management Limited, an English company, is the sole member of Cheyne Capital US, LLC. *Id.* ¶ 5.

Cheyne Capital Management (UK) LLP (the target of the Letter Rogatory) is an English limited liability partnership and has its principal place of business at 13 Cleveland Row, London SW1A 1DH, United Kingdom. *See* Bordage Decl. ¶ 6. It has one corporate member (Cheyne Capital Management Limited) and 26 members who are natural persons. *Id.*

Cheyne Capital US, LP and Cheyne Capital Management (UK) LLP are entirely independent entities. One natural person is both one of the 26 natural person members of Cheyne Capital Management (UK) LLP and also serves as a limited partner of Cheyne Capital US, LP; the two entities do not share employees, facilities, office space or documents, and they are not directly affiliated with each other. *See* Bordage Decl. ¶¶ 6-8. Cheyne Capital US, LP is at best a half-sister company to Cheyne Capital Management (UK) LLP.

### The Current Dispute

On May 9, 2024, Cheyne Capital US delivered a letter enclosing its Responses and Objections to the Subpoena to counsel for MPT. Ex. 7. This letter put MPT on notice of Cheyne Capital US's objections to the Subpoena based on the Subpoena's overbroad terms and document requests, which are not in any case relevant to the Alabama Proceeding, and the undue burden such wide-ranging requests would impose on Cheyne Capital US, which, in any event had no relevant

documents in response to the Subpoena.  This letter also included Cheyne Capital US's request that the improper Subpoena be withdrawn.  *Id.* at 1 (Cover Letter).  In an email response on May 10, 2024, MPT refused to withdraw its Subpoena and insisted that Cheyne Capital US's May 9 letter enclosing its Responses and Objections to the Subpoena provided no legitimate basis for contesting the Subpoena.  *See* Ex. 8.   In an email on May 13, 2024, counsel for Cheyne Capital US replied and explained for a second time its objections to the Subpoena, providing lengthy descriptions of the Subpoena's sweeping requests, which include terms that, as defined by the Subpoena, make the requests overbroad and incognizable.  *See* Ex. 9.  In that same communication, counsel for Cheyne Capital US agreed to meet and confer with MPT on various issues provided that MPT was willing to articulate how each category of documents sought was even arguably relevant to the Alabama Proceeding.  As of the date hereof, MPT has not responded.

## ARGUMENT

I.   **THE SUBPOENA SHOULD BE QUASHED AS THE DOCUMENTS REQUESTED ARE NOT WITHIN CHEYNE CAPITAL US'S POSSESSION, CUSTODY, OR CONTROL.**

A subpoena issued pursuant to Rule 45 of the Federal Rules of Civil Procedure reaches only documents and things in the recipient's "possession, custody, or control."  Fed. R. Civ. P. 45(a)(1)(A)(iii).  For purposes of Rule 45, a document is within "possession, custody, or control" of the recipient if the recipient has access ***and*** the practical ability to obtain the document.  *Shcherbakovskiy v. Da Capo Al Fine, Ltd.,* 490 F.3d 130, 138 (2d Cir. 2007).  Further, "a party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain."  *Id.*  When a subpoena is issued to one entity in order to obtain the documents of an affiliate entity, even when that affiliate is a direct subsidiary the entity subpoenaed, the targeted entity is not held to "automatically possess documents" belonging to its affiliate.  *See In re Mun*, 2022 WL 17718815 (S.D.N.Y. Dec. 15, 2022) (analyzing control in the context of a foreign discovery

application under § 1782); *In re Liverpool Ltd. P'ship*, 2021 WL 5605044, at *3 (S.D.N.Y. Nov. 24, 2021) ("[T]he fact that [the subsidiary entity] is a wholly owned (or even 'significant') subsidiary of Respondent is ***not*** dispositive of control."); *Laker Airways Ltd. v. Pan Am. World Airways*, 607 F. Supp. 324, 325 (S.D.N.Y. 1985) (vacating subpoenas seeking records from entity's New York branch when the requested records were regularly maintained at entity's home office in London).  The burden of demonstrating that the party from whom discovery is sought has access and the practical ability to obtain the requested documents lies with the party seeking the discovery.  *See In re Vivendi Universal, S.A. Sec. Litig.*, 2009 WL 8588405, at *3 (S.D.N.Y. July 10, 2009) (citing *Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 n.7 (S.D.N.Y. 1992)).  Where, as here, the only even arguably relevant documents sought are plainly located beyond the possession, custody or control of the entity subpoenaed, the subpoena must be quashed. *See id.*

More specifically, the document and information requests contained in the Subpoena at issue here (directed at Cheyne Capital US) were initially directed at Cheyne Capital UK, because, as Plaintiff told the Alabama District Court, the "documents that are relevant to" the Alabama Proceeding were likely held by non-party Cheyne Capital UK, which "***resides in the United Kingdom***."  *See* Ex. 2, at 2.  Not just that, MPT represented to the Alabama District Court and admitted that "[t]he evidence sought by Plaintiff can ***only*** be obtained" from Cheyne Capital UK. *See id.* at 8.

Based in part on this representation—that the evidence sought could "***only*** be obtained" in the UK—the Alabama District Court issued a Letter Rogatory, finding that "it would further the interests of justice to obtain documents in the possession of non-party Cheyne Capital Management (UK) LLP," an entity ***in London, England***.  *See* Ex. 4 at 1.  Plaintiff MPT, having obtained a

Letter Rogatory from the Alabama District Court then transmitted a copy of same to an entity bearing a Cheyne Capital name ("Cheyne Capital UK Ltd.") but that does not exist, rather than Cheyne Capital UK (subject of the Letter Rogatory), demanding a production of documents and suggesting that compelled compliance was imminent because Plaintiff MPT was "preparing to file the 'Intended Hague Application'" and Plaintiff MPT represented (falsely) that it was entitled to pre-action disclosure under English law, in any event.  Ex. 5.  Cheyne Capital UK responded to Plaintiff MPT's letter transmission by explaining the defects in its approach, including that the requests were improper, "extremely wide and vague," and thus "tantamount to a fishing expedition."  *See* Ex. 6.  Although MPT's counsel had previously told the Alabama District Court, under penalty of perjury, that "[u]pon the Court's issuance" of the Letter Rogatory, "counsel for Plaintiff will cause to be filed the Letter Request . . . with The Senior Master" in the Royal Courts of Justice in London, *see* Ex. 3 ¶ 4, Plaintiff MPT, on being alerted to the deficiencies in its letter of demand to Cheyne Capital UK, appears to have abandoned the foreign process it had so stridently threatened to commence and instead served the instant and improper Subpoena on Cheyne Capital US.  Notably, Cheyne Capital US is not mentioned anywhere in the complaint in the Alabama Proceeding or in the Letter Rogatory and, in fact, had no involvement at all in any of the events underlying the Alabama Proceeding.

Moreover, Cheyne Capital US, LP is not even directly affiliated with Cheyne Capital Management (UK) LLP.  *See* Bordage Decl. ¶ 7.  Cheyne Capital US, LP's general partner (Cheyne Capital US, LLC) has Cheyne Capital Management Limited as a sole member; that entity also serves as the corporate member (along with 26 other members who are natural persons) of Cheyne Capital Management (UK) LLP.  *Id.* ¶¶ 3, 5-7.



Cheyne Capital US does not have access to Cheyne Capital UK's documents, nor does it have the practical ability to obtain those documents.  *See* Bordage Decl. ¶¶ 8-9; *see Shcherbakovskiy,* 490 F.3d at 138.  Further, as the court explained in the *Vivendi* case, affiliated entities must truly be operating as a single entity in order to support a conclusion that one affiliate has the "practical ability to obtain the documents of the subsidiary."  *See In re Vivendi Universal, S.A. Sec. Litig.*, 2009 WL 8588405, at *3-4 (S.D.N.Y. July 10, 2009).  All the more so when the two affiliated entities are not in a parent-subsidiary relationship.  But even in the context of a direct relationship, such as that of a parent to a subsidiary, "interlocking officers or directors, without a showing of actual control" does not suffice to establish the practical ability to obtain documents.

*Id.* Instead, the affiliates must be "operating as one entity" as evidenced by "shared employees, shared facilities, shared office space and . . . common practices and forms." *Id.* MPT has not even attempted to make this showing here, nor could it—while one natural person is both a limited partner (one of 26 such natural persons) of Cheyne Capital UK and Cheyne Capital US, the two entities do not share employees, facilities, office space or documents. *Id.* at *4. Thus, Cheyne Capital US cannot possibly be deemed to have access to the documents of Cheyne Capital UK.

Moreover, MPT's attempt to circumvent the Hague Convention in this manner is an independent basis for granting the motion to quash. *Laker* Airways, 607 F. Supp. 324, 325 (S.D.N.Y. 1985) (holding alternate ground for granting motion to quash was that "service of the subpoenas in New York is a transparent attempt to circumvent the Hague Convention . . . ," which is "more than a mere technicality"). *Id.* at 326. Here, too, the same is true: the Subpoena served on Cheyne Capital US, which is identical in all material respects to the Letter Rogatory obtained from the Alabama District Court, is plainly being pursued in an attempt to circumvent the Hague Convention, which Plaintiff's counsel declared under penalty of perjury that she would follow. The Subpoena should be quashed on this basis alone. For these reasons, this Court should grant the motion and quash the Subpoena improperly issued by Plaintiff MPT.

## II.   THE SUBPOENA IS OVERBROAD, SEEKS INFORMATION NOT RELEVANT OR PROPORTIONAL TO THE NEEDS OF THE ALABAMA PROCEEDING, AND COMPLIANCE WOULD IMPOSE AN UNDUE BURDEN ON CHEYNE CAPITAL US.

In determining whether a subpoena imposes an undue burden under Rule 45, courts weigh "the burden to the subpoenaed party against the value of the information to the serving party" by considering factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Citizens Union of N.Y.C. v. Att'y Gen. of N.Y.*, 269 F. Supp.

3d 124, 138, 148-49 (S.D.N.Y. 2017) (granting motion to quash where "locating, collecting, logging, and producing" the requested documents would amount to an undue burden and be "disproportional to the needs of this case considering that the discovery is of no real probative value to Plaintiffs' claims").   The relevance standard of Rule 26 that applies when seeking discovery from a party also applies to non-parties.  *Id.* at 139.  Under Rule 26(b), discovery may ***only*** be obtained if that discovery is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  The party seeking discovery bears the initial burden of proving the discovery is relevant.  *Alexander v. New York City Dep't of Educ.*, 339 F.R.D. 372, 374 (S.D.N.Y. 2021).

Here, MPT has made no showing that the full range of information and documents sought is relevant to the allegations and claims at issue in the Alabama Proceeding.  *See Alexander*, 339 F.R.D. at 374 (granting motion to quash where defendants "made no effort to identify in their subpoena categories of documents that are relevant to the claims and defenses in the case").  In fact, in correspondence between counsel, MPT has refused to even try to explain relevance.  As described in the Letter Rogatory, the documents sought are purportedly relevant to an agreement and related dealings between Cheyne Capital UK and one or more defendants in the Alabama Proceeding.  *See* Ex. 4 at 8-9.  Cheyne Capital US is not alleged to have been a party to this agreement or those dealings and, in fact, is not a party to any agreement with any defendant in the Alabama Proceeding.  *See* Bordage Decl. ¶ 10.  For this reason alone, the motion to quash should be granted as unduly burdensome.  *See Alexander*, 339 F.R.D. at 374.

Relevance issues aside, the Subpoena is also unduly burdensome based on its incredible breadth and vagueness.   As set forth above, Request No. 1, begins innocuously enough, seeking "Documents and Communications related to any Defendant, or any Person working on behalf of or in concert with any Defendant"—except for the fact that the request is apparently limitless in the subject-matter of the communications it requests, which it does not even attempt to tether to MPT.  *See* Bordage Decl., Ex. 1 at 8.  Request No. 1 contains three subparts, which purport to explain what the "Request encompasses"; however, these subparts do not actually narrow the initial request or even mention MPT at all.  Subpart A notes that the request covers documents and communications "including ***but not limited to*** communications exchanged pursuant to ***any*** agreement" with a Defendant, without regard to whether the subject agreement relates in any way to the Alabama Proceeding.  *Id.*  Subpart B fares no better.  *Id.*  It covers "***any*** payments" with "any Defendant" or "***any*** Person" working "in concert with" or "on behalf of" any of them, also without regard to whether any of those purported payments relate in any way to the Alabama Proceeding (or even MPT).  *Id.*  Perhaps not surprisingly, Subpart C is even broader, covering documents and communications "concerning contracts, memoranda of understanding, letters of intent, confidentiality agreements, non-disclosure agreements, profit-, risk-, loss-, or cost-sharing agreements, or ***any other agreements*** or ***draft*** agreements ***of any kind***, whether written or oral" with a Defendant or "***any*** Person working on behalf of or in concert with any Defendant" regardless of any relation to the Alabama Proceeding or MPT.  *Id.*

This is bad enough. Yet applying the definitions contained in the Subpoena, based solely on the plain meaning of the words, renders this request incognizable.  "Defendant" is defined to include not just defendants to the Alabama Proceeding but also "all Persons acting or purporting to act on their behalf."  Bordage Decl., Ex. 1 at 1.  Person is, in turn, defined to include "any

individual, corporation, partnership, firm, association, government agency, or other organization recognizable at law, together with its agents, employees, and representatives." *Id.* at 3. If we substitute just the definition of Defendant and Person into Request No. 1 (and set aside the separately objectionable definitions of "Document" and "Communication"), Request No. 1 reads as follows:

> Documents and Communications related to any <u>named defendant together with any individual, corporation, partnership, firm, association, government agency, or other organization recognizable at law, together with its agents, employees, and representatives acting or purporting to act on their behalf</u>, or any <u>individual, corporation, partnership, firm, association, government agency, or other organization recognizable at law, together with its agents, employees, and representatives acting or purporting to act on their behalf</u> working on behalf of or in concert with any <u>named defendant together with any individual, corporation, partnership, firm, association, government agency, or other organization recognizable at law, together with its agents, employees, and representatives acting or purporting to act on their behalf</u>.

*Id.* (underlining indicates definition substituted for defined term). In other words, Request No. 1 appears to demand the production of documents and communications related to any named defendant or any person or entity acting on behalf of any named defendant, or any person or entity acting on behalf of any person or entity acting on behalf of a named defendant—and it provides absolutely no clarity on who these many people or entities might be.

Request No. 2, which seeks "Documents and Communications relating to MPT or MPT Securities," is similarly overbroad. In the first instance, it contains six subparts. Subpart A seeks Documents and Communications "concerning ***any*** communications, interactions, discussions, or meetings between You and ***any*** other Person(s) . . . , including, ***without limitation***" communications with at least twenty listed individuals or entities, only one of which is defined or described at all in the Subpoena. Bordage Decl., Ex. 1 at 8-9. Subpart B is also wide-reaching and seeks documents and communications "concerning contracts, memoranda of understanding,

letters of intent, confidentiality agreements, non-disclosure agreements, profit-, risk-, loss-, or cost-sharing agreements, or other agreements or draft agreements of any kind, whether written or oral, ***between You and any other Person***, including without limitation the Persons listed in Request No. 2 above, concerning MPT." *Id.* Subpart B, like Subpart A, does not provide further clarity on the twenty individuals or entities listed. Subpart C requests documents and communications "***concerning*** or ***relating to*** any payments or other consideration paid by You to ***any*** other Person, whether actual or potential, in exchange for or in connection with the creation or dissemination of Tweets, Reports, statements, or other material concerning MPT." *Id.*

Subparts D, E, and F are no better. Subpart D seeks documents and communications "related to the value of MPT Securities and ***any*** recommendation to purchase, sell, or short-sell MPT Securities," without regard to who might have made the recommendation. *See* Bordage Decl., Ex. 1 at 9. Subpart E seeks documents and communications "related to ***any*** Reports or other public statements concerning MPT," including those regarding "***any*** decision to create or publish any Report, Tweet, or other public statement concerning MPT, and ***any records of or related to any meetings*** concerning the foregoing," regardless of who made the decision to Tweet (or who actually wrote the Tweet). *Id.* Last, Subpart F requests documents and communications "concerning ***any Transaction*** in MPT Securities by You or any Person acting on behalf of You, including any short sales of MPT Securities." *See id.*

As with Request No. 1, even applying the plain language meaning of the terms results in significantly overbroad and hard-to-unpack requests: the Request itself and Subparts D and E in particular appear to apply to all individuals or entities globally in that they do not specify any limitation in terms of who the documents and communications purportedly were from or to whom they were directed. But as with Request No. 1, the definitions render the subparts unintelligible.

For example, even if we could be sure of the identity of the twenty or so listed individuals and entities in Subparts A and B, those subparts apply to "Documents and Communications" between "You and any other Person(s) concerning MPT."  *See* Bordage Decl., Ex. 1 at 8-9.  Substituting in the definitions of "You" and "Person(s)" in the portion of the subpart that reads "You and any other Person(s) concerning MPT" results in the following request:

> Cheyne Capital US, L.P. and any of its divisions, subsidiaries, parents, or affiliates, or other entities from whom Cheyne Capital US, L.P. has the practical ability to obtain the documents requested herein, together with each of their respective employees, partners, associates, shareholders, officers, directors, and agents, and all other persons acting or purporting to act on their behalf and any of its divisions, subsidiaries, parents, or affiliates, or other entities from whom Cheyne Capital US, L.P. has the practical ability to obtain the documents requested herein, together with each of their respective employees, partners, associates, shareholders, officers, directors, members, and agents, and any other any individual corporation, partnership, firm, association, government agency, or other organization recognizable at law, together with its agents employees and representatives concerning MPT.

*Id.* (underlining indicates definition substituted for defined term).  As is evident from the text itself, this request is nonsensical when the definitions are inserted, partially because the definitions contain redundancies but also because they are extraordinarily broad and limitless.  Courts routinely grant motions to quash when confronted with similarly boundless requests.  *See e.g.*, *Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (granting motion to quash where defendants failed to "limit [their] subpoena to certain categories of documents" and were "merely trying to engage in a fishing expedition"); *see also Estate of Ungar v. Palestinian Authority*, 332 F. App'x 643, 645 (2d Cir. 2009) (affirming district court's quashing of subpoena that asked for "essentially every document" relating to its representation of a nonparty, which was "overly broad and burdensome").

### III.     THE SUBPOENA IS IMPROPER AND THE COURT SHOULD AWARD ATTORNEY'S FEES

Under Fed. R. Civ. P. 45(c)(1), a court may impose sanctions, including lost earnings and reasonable attorney's fees, when a party or an attorney responsible for the issuance and service of a subpoena does not take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  Sanctions are properly imposed and attorney's fees are properly awarded where, as here, a party improperly issues a subpoena and refuses to withdraw it, requiring the non-party to institute a motion to quash.  *See Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 2003 WL 23018833, at *8–9 (S.D.N.Y. Dec. 23, 2003) (finding that sanctions and attorneys' fees were properly imposed "where . . . the party improperly issuing the subpoena refused to withdraw it, requiring the non-party to institute a motion to quash"); *American Int'l Life Assurance Co. v. Vasquez,* 2003 WL 548736, at *2–3 (S.D.N.Y. Feb. 25, 2003) (imposing sanctions for lost wages and awarding attorney's fees incurred in bringing motion to quash after attorney issuing subpoena refused to comply with non-party's request to voluntarily withdraw subpoena that sought privileged information).  In *Night Hawk*, the subpoena recipient was a non-party whose testimony was not necessary because the subpoena sought information concerning an entity that was no longer party to the underlying case.  Because the issuing parties could not "establish that the relevance of the Subpoena outweighs the burden it imposes on non-party [recipient]" and because the issuing parties refused to withdraw it, the court awarded attorney's fees in connection with a motion to quash.  *See Night Hawk Ltd.*, 2003 WL 23018833, at *8–9.

Here, MPT has refused to voluntarily withdraw its Subpoena, even though Cheyne Capital US has described to counsel for MPT—in great detail—the Subpoena's deficiencies and requested that the Subpoena be withdrawn on that basis.  For instance, on May 9, 2024, Cheyne Capital US delivered a letter enclosing its Responses and Objections to the Subpoena to counsel for MPT.  Ex.

18

7.  This letter put MPT on notice of Cheyne Capital US's objections to the Subpoena based on the Subpoena's overbroad terms and document requests, which are not in any case relevant to the Alabama Proceeding, and the undue burden such wide-ranging requests would impose on Cheyne Capital US.  This letter also included Cheyne Capital US's request that the improper Subpoena be withdrawn.  *Id.*  However, in an email communication response on May 10, 2024, MPT refused to withdraw its Subpoena and insisted that Cheyne Capital US's May 9 letter enclosing its Responses and Objections to the Subpoena provided no legitimate basis for contesting the Subpoena.  *See* Ex. 8.  In an email communication on May 13, 2024, counsel for Cheyne Capital US replied and explained for a second time its objections to the Subpoena, providing lengthy descriptions of the Subpoena's sweeping requests, which include terms that, as defined by Subpoena, make the requests redundant and so broad as to be incognizable.  *See* Ex. 9.  In that same communication, counsel for Cheyne Capital US agreed to meet and confer with counsel for MPT on the various issues with the Subpoena provided that MPT was willing to articulate how each category of documents sought was even arguably relevant to the Alabama Proceeding.  MPT never even responded.

Thus, MPT has made no efforts to take reasonable steps to avoid imposing this undue burden and expense on Cheyne Capital US.  *See* Fed. R. Civ. P. 45(d)(1).  Moreover, MPT has not made any effort to establish the relevance of the Subpoena to the Alabama Proceeding or demonstrate that the burden such discovery requests would impose on non-party Cheyne Capital US is outweighed by the discovery's relevance.  *See Night Hawk Ltd.*, 2003 WL 23018833, at *8– 9.  Indeed, MPT's improper Subpoena and subsequent refusal to withdraw its Subpoena has caused Cheyne Capital US to incur unnecessary fees and costs in bringing this motion to quash MPT's Subpoena, and thus an award of attorney's fees is proper.

## <u>CONCLUSION</u>

For the reasons stated above, this Court should grant Cheyne Capital US's motion to quash and award Cheyne Capital US its reasonable fees and costs incurred in bringing this motion.

Dated:  May 15, 2024

Respectfully submitted,

By: */s/ Shireen A. Barday*

Shireen A. Barday
PALLAS PARTNERS (US) LLP
75 Rockefeller Plaza
New York, NY 10019
Telephone: (212) 970-2302
shireen.barday@pallasllp.com

*Attorneys for Cheyne Capital US, LP*

20